**STATE of Tennessee, Appellee,**

v.

**Jesse Allen McKINNEY, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

May 15, 1980.

Hugh E. Green, Jr., B. F. Lowery, Richard M. Brooks, Carthage, Tenn., for appellant.

William M. Leech, Jr., Atty. Gen., Charles L. Lewis, Asst. Atty. Gen., Tom P. Thompson, Jr., Dist. Atty. Gen., Hartsville, Guy E. Yelton, Asst. Dist. Atty., Mount Juliet, for appellee.

## OPINION

TATUM, Judge.

The defendant, Jesse Allen McKinney, was convicted of second–degree murder and sentenced to serve 45 years in the State penitentiary. On this appeal, he makes several issues for review on the various grounds that will hereinafter be discussed. We find no reversible error and must, therefore, affirm the judgment of conviction.

█ Since the defendant attacks the weight and sufficiency of the evidence, we will summarize it. At about 7:30 A.M., on September 7, 1978, the defendant, then 18 years of age, picked up the 51–year old victim, Robert St. John, hitchhiking near Gordonsville in Smith County. The two men went to a beer tavern where they spent several hours shooting pool and drinking beer. At the beer tavern, the victim had a large sum of money, but the defendant stated that he had none. They reappeared at the victim's home about 2:30 P.M. and went into the barn for about 20 minutes before leaving in the defendant's truck. The defendant returned to the beer tavern alone where he bought a quantity of beer with a $20 bill. Between 5:00 and 6:00 P.M., the victim's wife saw the defendant, who was driving alone at a fast rate of speed, return to the area.

After several days, the victim's wife, aware of her husband's drinking problem, reported to the Sheriff that the victim was missing and requested him to check jails in adjoining counties. Not being able to locate the victim, officers asked the defendant if he had seen the victim; and the defendant replied, "I don't know what you are talking about–I don't know him. I have never seen or heard tell of him." Shortly thereafter, the defendant told another officer that he had been with the victim on September 1 but had "put him out in Gordonsville about 3:00 in front of the Baptist Church."

On September 10, 1978, the victim's body was found in a secluded area on the back side of the farm belonging to the defendant's family. The body, in a partially decomposed state, was lying with the carcasses of farm animals in an area referred to in the record as an "animal graveyard." An autopsy revealed that the victim died from a bullet wound that entered the posterior right side of the chest and exited from the front of the chest. The exit was approximately 8 inches higher than the entry. The victim also suffered a gunshot wound in the leg and two tears on the side and toward the back of the head. Both gunshot wounds were to the back portion of the body and traveled toward the front.

On September 10, after the body was found, a TBI Agent was summoned to the McKinney farm by the defendant's attorney. A recorded statement was taken on this occasion in the presence of the attorney. In the statement, the defendant admitted shooting the victim and removing the body to the animal graveyard. The defendant told the officers that he used a pistol that had been seized by a Tennessee State Trooper on September 7 in Lebanon. The defendant told of being at the beer tavern where he loaned the victim a few dollars and then drove him home. In this version, the defendant said that the victim appeared at his home and demanded money. The defendant got a gun from under the porch and hit the victim with it. After this, the victim came in possession of the gun, but it was subsequently recovered by the defendant. The defendant said that the victim started running away and threatening to kill him and that he shot the victim. The defendant then went to Carthage for a hamburger.

On September 29, 1978, the defendant, his mother, and his attorney returned to the TBI Agent's office and gave another statement. In this statement, he said that he and the victim were accompanied by a woman when they left the beer tavern. The defendant claimed that he passed out; and when he woke up at his home, the woman told him that the victim was dead and that his body was in the truck. The defendant then assisted the woman in concealing the victim's body at the animal

graveyard. The defendant was under the impression that the woman killed the victim in the garage and then put the body in the truck.

Testifying in his own behalf, the defendant gave yet another version of the incident. He testified that after drinking at the beer tavern and going by the victim's home, they went to the McKinney farm to feed the pigs. While the defendant was changing shoes, the victim ordered him to perform an oral homosexual act. When the defendant refused, the victim pushed him; and the defendant hit the victim. The defendant then got the pistol; and while they wrestled, the victim threatened to kill him if he did not perform the sex act. The defendant fell to the ground, according to this version, and started shooting at the victim to keep him back but did not intend to hit him. After the killing, the defendant was "scared and ashamed" and hauled the victim's body to the animal graveyard. The victim's wife, members of his family, and other witnesses testified that the victim had no homosexual tendencies.

We find ample evidence upon which a rational jury could be convinced beyond a reasonable doubt of the defendant's guilt of murder in the second degree. We must therefore overrule the issue attacking the weight of the evidence. Rule 13(e), *Tennessee Rules of Appellate Procedure; Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ The defendant complains of the trial judge's allowing the State to introduce photographs of the victim's body taken before the body was removed. The Supreme Court, which has followed a policy of liberality in the admission of photographs, has held that the admissibility of photographs lies within the discretion of the trial court whose ruling will not be overturned on appeal except upon a clear showing of an abuse of discretion. Before admitting photographs in evidence, the trial judge should weigh its prejudicial effect against its probative value. *State v. Banks*, 564 S.W.2d 947 (Tenn.1978).

The two small photographs admitted in evidence are in black and white; they are three inches by three inches in size. One of them depicts the victim's leg and feet protruding from weeds, and the other shows the torso of the victim's body surrounded by weeds or bushes. The victim's wounds are not discernible, as the photographs are not clear. The only probative value in offering the photographs was to show the manner in which the body was hidden. While we find the probative value to be limited, we also find little or no inflammatory effect. We do not find that the trial judge abused his discretion in admitting these photographs.

■ The defendant next insists that the trial judge erred in permitting the jury to return to their homes at night even though he consented to this procedure at trial. He cites T.C.A. § 40-2528 which provides:

"40-2528. Separation of jurors.—In all criminal prosecutions *except those in which a death sentence may be rendered*, the judge of the criminal court may, in his discretion, with the consent of the defendant, and with the consent of the district attorney general, permit the jurors to separate at times when they are not engaged upon the actual trial or deliberation of the case." (Emphasis supplied.)

The defendant was indicted for first–degree murder. However, the trial judge, with consent of the State, directed a verdict to the capital offense and submitted the case to the jury as second–degree murder, which, of course, is a non–capital felony.

Since the jury could not consider the death sentence for the crime, any error committed by the trial judge in not sequestering the jury was cured by the direction of the verdict. The exception in the statute, with respect to those cases in which a death sentence could be rendered, was obviously intended by the legislature to provide an extra safeguard for those who might be sentenced to pay the extreme price. The exception was no longer applicable to the defendant after the trial judge directed a verdict in his favor as to the capital offense.

As noted above, the defendant consented to the separation of the jury. In view of our holding that any error was cured by the direction of the verdict, we pretermit the question of whether the defendant's consent to the jury's separation constitutes a waiver of the benefits of the statute or whether he is estopped from raising this question.

 The defendant next avers that the trial court erred in permitting the testimony of a Tennessee State Trooper regarding another arrest of the defendant seven days after the shooting. The trooper testified that he stopped the defendant's vehicle in Wilson County on September 7 for having no taillights. The officer observed a pistol in the truck in plain view, confiscated it, and arrested the defendant for carrying the pistol with the intent to go armed. The defendant admitted in a pre-trial statement that this is the same pistol that had been used by him in shooting the defendant.

It is axiomatic that if evidence is competent, material and relevant to the issues on trial, it is not rendered inadmissible merely because it may show the defendant guilty of another crime. *Dandridge v. State*, 552 S.W.2d 791 (Tenn.Cr.App.1977); *Campbell v. State*, 469 S.W.2d 506 (Tenn.Cr.App. 1971); *Russell v. State*, 489 S.W.2d 535 (Tenn.Cr.App.1972). Evidence that the defendant had possession of the murder weapon seven days after it was used to shoot the defendant is material. We also find no prejudice from this evidence. This issue is overruled.

 The defendant complains that during the closing argument, the Assistant District Attorney General mentioned that punishment for second-degree murder is 10 years to life in the State penitentiary. While the defendant cites no authority supporting his theory that the State cannot legitimately argue punishment, we cannot consider this assignment because the defendant did not object to this argument. *Woodson v. State*, 579 S.W.2d 893 (Tenn.Cr. App.1978), (*See*, also, cases cited therein); *Lillard v. State*, 528 S.W.2d 207, 211 (Tenn. Cr.App.1975); Rule 36(a), *Tennessee Rules of Appellate Procedure* (1979).

The defendant assigns issues concerning other portions of the State's argument, but the only ground mentioned in the motion for a new trial concerning argument is:

"That the Assistant Attorney General, Guy Yelton, made improper and prejudicial statements to the jury in his voir dire examination in that he argued the proposition of punishment stating on occasion the number of years for certain offenses contained in the indictment, *and made further prejudicial statements in his final argument to the jury that were in violation of the defendant's rights to a fair and impartial trial.*" (Emphasis supplied.)

The other issues concerning the State's argument are in no way related to the proposition of punishment. Rule 3(e) of the *Rules of Appellate Procedure* (1979) provides in part:

". . . Provided, however, that in all cases tried by a jury, no assignment of error shall be predicated upon alleged error in the admission or exclusion of testimony, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial in the lower court and decided adversely to the appellant; otherwise such assignments will be treated as waived. . . ."

In *Memphis St. Ry. Co. v. Johnson*, 114 Tenn. 632, 88 S.W. 169, 171 (Tenn.1905), the Court states:

"We are of the opinion that the grounds set out in the motion should be as specific and certain as the nature of the error complained of will permit. Thus, if the error consists in the admission or rejection of evidence, the evidence admitted or rejected should be stated. If it be for affirmative error in the charge, or for failure to give an instruction properly and seasonably presented, it should set out the portion of the charge complained

of, or the instruction refused, or otherwise definitely identify the instruction. If it be for misconduct of the opposite party or that of the jury, the facts constituting it should be stated."

■ In a motion for a new trial, the grounds relied upon must be specified with reasonable certainty for several reasons: (1) to advise the trial court and opposing counsel of the error or irregularity relied upon and (2) to advise the appellate courts that the trial court was made aware of the alleged error and was given an opportunity to consider and pass on it. *Memphis St. Ry. Co. v. Johnson, supra; Ferguson v. State*, 166 Tenn. 308, 61 S.W.2d 467 (1933). Therefore, to comply with Rule 3(e), *supra*, the motion for a new trial must specify the portion of oral argument complained of with reasonable certainty; otherwise, the matter cannot be considered by the trial court on the motion for a new trial or by an appellate court on appeal.

■ The defendant also insists that the two pre-trial statements given to the police by him in the presence of his attorney were inadmissible in evidence under the holding of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The defendant and his retained counsel voluntarily came to the policemen in each instance for the purpose of giving a statement. The defendant stated, in the presence of his attorney, that his attorney had advised him of his rights. The *Miranda* case itself holds that the presence of the defendant's attorney obliterates the necessity for a police officer to advise one in custody of his rights as mandated by *Miranda* :

"The presence of counsel . . . would be the adequate protective device necessary to make the process of police interrogation conform to the dictates of the privilege [*i. e.*, against self–incrimination]. His presence would insure that statements made in the government–established atmosphere are not the product of compulsion."

*Miranda, supra*, at 466, 86 S.Ct. at 1623.

We also note that in neither instance when the defendant gave these statements

was he in police custody. He voluntarily came to the policemen with his attorney; therefore, he was deprived of no right sought to be protected by *Miranda.*

■ In another issue, the defendant complains of a statement by the trial judge during the testimony of a State's witness to the effect that "every witness is presumed to speak the truth under the law." The defendant insists that the trial judge's statement was improper judicial comment. While we do not agree that this statement affected the results of the trial, we cannot consider it since it was not presented in the defendant's motion for a new trial. Rule 3(e), *Tennessee Rules of Appellate Procedure.*

■ In another issue, the defendant contends that the trial judge should have instructed the jury that his intoxication must be taken into consideration to determine whether the defendant had the specific intent to commit the crime of second degree murder. Second–degree murder is not a specific intent crime, and voluntary intoxication will not mitigate, excuse, or justify this offense. *Harrell v. State*, 593 S.W.2d 664 (Tenn.Cr.App.1979).

■ Finally, the defendant makes an issue on the grounds that the widow of the victim was permitted to remain in the courtroom. The record reflects that the widow was designated as prosecutrix and sat in the courtroom while preliminary questions were asked the State's first witness. She was then placed under the rule of sequestration. While we find neither error nor prejudice in this procedure, we must overrule this issue because the question was not presented to the trial judge in the defendant's motion for a new trial as required by Rule 3(e), *Tennessee Rules of Appellate Procedure.*

The judgment below must be affirmed.

DWYER and DUNCAN, JJ., concur.