900 S.W.2d 305 (1994)
STATE of Tennessee, Appellee,
v.
Terry W. BUTLER, Appellant.
Court of Criminal Appeals of Tennessee, at Knoxville.
September 14, 1994.
*307 Charles W. Burson, Atty. Gen. and Reporter, Christina S. Shavalier, Asst. Atty. Gen., Nashville, Alfred C. Schmutzer, Jr., Dist. Atty. Gen., Richard R. Vance, Asst. Dist. Atty. Gen., Jim Dunn, Asst. Dist. Atty. Gen., Sevierville, for appellee.
W. Gordon Ball, Knoxville, for appellant.

OPINION
JONES, Judge.
The appellant, Terry W. Butler, was convicted of murder in the second degree by a jury of his peers. The trial court, finding that the appellant was a standard offender, imposed a Range I sentence of confinement for twenty (20) years in the Department of Correction.
The appellant presents five issues for review. He contends that the evidence contained in the record is insufficient, as a matter of law, to support a finding by a rational *308 trier of fact that he was guilty of murder in the second degree. He asks this Court to reduce the grade of the offense to involuntary manslaughter. He also contends that the trial court committed error of prejudicial dimensions in the charge given to the jury, refusing to instruct the jury on the defense of voluntary intoxication, and imposing an excessive sentence.
The judgment of the trial court is affirmed. The sentence is reduced to twelve (12) years.
The appellant was addicted to cocaine. He told a TBI agent that he was "strung out on cocaine real bad" when he committed the crime in question. On the evening of May 24, 1984, he had ingested cocaine "all night." On the morning of May 25, 1984, at approximately 8:30 a.m., the appellant went to the basement of his residence and ingested more cocaine.
The appellant noticed that "someone was standing approximately five feet" from him. The appellant was not able to determine the identity of the person due to the poor lighting conditions. He was startled and scared. He turned and fired a pistol[1] at the person, and the person fell to the floor. He subsequently discovered that he had killed his neighbor, Dorothy Murrell.
According to the appellant, he panicked. He wrapped the victim's body in a carpet that was in the basement. He left the victim's body in the basement from Friday until Monday. He then transported the body to the service station where he worked. He placed the body, still wrapped in the carpet, in a storage room. The appellant approached two people to assist him in moving and disposing of the body. Neither person would assist him. Finally, the owner of the service station told him: "[G]et it [the victim's body] out of here. And you get out of here." That night the appellant placed the victim's body in a dumpster behind the service station. He assumed that the body was taken to the land fill. The owner of the service station apparently fired the appellant for hiding the victim's body at the service station.
At the time he killed the victim, the appellant was married and living with his wife. However, he was having an affair with Myra Cheek. He told Cheek that "he had killed a man over a drug deal ... in some empty house, and had wrapped his body up in [a] carpet, and put it in the storage room at the [s]ervice [s]tation." Later, she drove to the service station and went to the storage room where the victim's body was stored to satisfy her curiosity. The smell was "unbearable." There were a "lot of flies around the door" leading to the storage room. She filled her car with gas and left the station.
The Tennessee Bureau of Investigation assisted the sheriff in the investigation that commenced after the victim was discovered missing. An agent talked to the appellant during a routine scouring of the neighborhood. In 1985, Cheek gave a statement to a TBI agent. The appellant was interviewed again. On both occasions he stated he did not know why the victim had disappeared.
In 1991, the appellant told his pastor that he had killed the victim. A few months later he told his wife. He subsequently gave a statement to a TBI agent. He also gave a statement to the local sheriff. He was arrested and charged with killing the victim after the latter statement.

I.

A.
When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt."[2] This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, *309 or a combination of direct and circumstantial evidence.[3]
In determining the sufficiency of the convicting evidence, this Court does not reweigh or reevaluate the evidence.[4] Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence.[5] To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence.[6]
Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court.[7] In State v. Grace,[8] our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."[9]
Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the jury.[10] This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt.[11]

B.
Before an accused could be convicted of murder in the second degree when the offense in question was committed,[12] the state was required to prove beyond a reasonable doubt that the accused unlawfully and willfully killed the victim, and that the killing was malicious.[13] Both the state and the appellant correctly argue that malice is an essential element of murder in the second degree.[14] The appellant argues that the state failed to establish this element of the offense beyond a reasonable doubt. The state argues that this element of the offense may be inferred from the appellant's use of a deadly weapon and his concealment of the victim's body.
Malice may be either express or implied.[15] "Express" malice is malice that is directed at the victim.[16] "Implied" malice is *310 general malice. It may be inferred "from the naked fact of the attempted killing, and the act is committed deliberately and is likely to be attended with dangerous consequences."[17] It has long been established that malice may be inferred when a deadly weapon is used to kill the victim.[18]
In his statement to the TBI agent, the appellant stated that he carried a pistol with him at all times. In addition, the appellant had ingested cocaine immediately prior to killing the victim. When he saw the image of the victim, he had the pistol in his hand. He turned and fired. He made no effort to determine the identity of the person. Based on these facts, a rational trier of fact could conclude that the appellant was guilty of murder in the second degree beyond a reasonable doubt.[19]
This issue is without merit.

II.
The appellant contends that the trial court's instruction on the elements of murder in the second degree was erroneous. His primary complaint is that the trial court failed to define the term "willful" as used in the phrase "willful recklessness."
This issue has been waived. The appellant fails to cite where the facts giving rise to this issue can be found in the record.[20] However, this Court opts to consider this issue on the merits.
When words and terms are in common use and can be understood by people of ordinary intelligence, it is not necessary, in the absence of anything in the charge given by the trial court to obscure their meaning, for the trial court to define or explain the term.[21] In the recent case of State v. Braden,[22] a prosecution for vehicular homicide, this Court held that the word "willful" is a word that is in common use; and this word can be understood by people of ordinary intelligence.[23] Thus, the trial court, as in Braden, was not required to define the word "willful" in the charge given to the jury.
This issue is without merit.

III.
The appellant contends that the trial court committed error of prejudicial dimensions in refusing to include his special request on voluntary intoxication in the charge given to the jury. He argues:
At the core of the defendant's challenge [to] his lack of malice is his assertion that he was incapable, because of voluntary intoxication, of premeditation for forming any malice. Whether malice is present is a question for the jury to determine from all the circumstances of the case. Therefore the voluntary intoxication charge should have been given.
The fallacy in this argument is that voluntary intoxication is neither an excuse nor a defense to murder in the second degree.[24] Murder in the second degree is *311 not a specific intent offense.[25] In State v. McKinney,[26] the accused argued that "the trial judge should have instructed the jury that his intoxication must be taken into consideration to determine whether the defendant had the specific intent to commit the crime of second degree murder."[27] In ruling that the appellant was not entitled to an instruction on voluntary intoxication, this Court said: "Second-degree murder is not a specific intent crime, and voluntary intoxication will not mitigate, excuse, or justify this offense."[28]
This issue is without merit.

IV.
The appellant contends that he was entitled to the minimum sentence for murder in the second degree. He argues that the trial court was mistaken when it announced that the minimum sentence was fifteen years; and the trial court erroneously applied enhancing factors when imposing sentence.
The offense was committed in 1984 when the Tennessee Criminal Sentencing Reform Act of 1982 governed sentencing in criminal cases. The appellant was sentenced on March 12, 1993. The 1982 Act had been repealed. It was replaced by the Tennessee Criminal Sentencing Reform Act of 1989, which governed sentencing at the time the trial court imposed sentence. The record reflects that the trial court did not follow the mandate of State v. Pearson.[29]Pearson requires the trial court to calculate the sentence which would be imposed if the 1982 Act was in effect as well as the sentence that should be imposed pursuant to the 1989 Act.[30] The trial court must then impose the lesser of the two sentences.[31]

A.
When an accused challenges the length of his sentence, it is the duty of this Court to conduct a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct."[32] However, there are exceptions to this requirement. The requirement that this Court presume the determinations made by the trial court are correct is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."[33] The presumption of correctness also does not apply to the legal conclusions reached by the trial court in sentencing the accused, or to the determinations made by the trial court which are predicated upon uncontroverted facts.[34]
The appellant has the burden of establishing that the sentence imposed by the trial court was erroneous.[35] In determining whether the appellant has established that the sentence imposed by the trial court was erroneous, this Court must consider (a) the evidence adduced at trial and the sentencing hearing, (b) the pre-sentence report, (c) the principles of sentencing, (d) the arguments of counsel, (e) the nature and characteristics of the offenses, and (f) the appellant's potential or lack of potential for rehabilitation or treatment.[36] Also, this Court must determine the sentence that would be *312 imposed pursuant to both the 1982 Act and the 1989 Act.[37]

B.
As previously stated, this offense occurred in 1984. At that time, the punishment for murder in the second degree was set by statute. The applicable statute, Tenn. Code Ann. § 39-2-212, stated: "Every person convicted of murder in the second degree shall be imprisoned in the penitentiary for life or for a period of not less than ten (10) years."[38]
In calculating a sentence pursuant to the 1982 Act, a life sentence was "presumed to be sixty (60) years."[39] Since the appellant qualified for a Range I sentence, the possible punishment would be not less than ten (10) years and not more than thirty-five (35) years.[40]
Felony offenses committed prior to November 1, 1989, fit into one of five classes created by the 1989 Act.[41] Murder in the second degree is a Class A felony.[42] Since the appellant qualifies as a standard offender, he would be sentenced within Range I for a Class A felony. The possible punishment under the 1989 Act would be not less than fifteen (15) years nor more than twenty-five (25) years.[43]
The mitigating and enhancing factors that are applicable in this case are the same under both the 1982 Act and the 1989 Act. The 1982 Act did not provide for a presumptive minimum sentence while the 1989 Act does contain such a presumptive sentence when no enhancement factors are present.[44] Also, appellate review of sentences pursuant to the 1982 Act was de novo without a presumption of correctness.[45] The 1989 Act requires the appellate court to review sentences de novo with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d) (1990). The release eligibility date would be the same under both the 1982 Act and the 1989 Act.

C.
The trial court found that four enhancement factors were established by the record. The factors included: (1) the appellant had a previous history of criminal behavior,[46] (2) the victim was particularly vulnerable due to age and a physical disability,[47] (3) the appellant employed a firearm during the commission of the offense,[48] and (4) the appellant did not hesitate in committing a crime when the risk to human life was high.[49]
The trial court properly enhanced the appellant's sentence because he had a history of criminal behavior. The appellant candidly admitted that he was addicted to cocaine and used the substance frequently prior to the murder.[50] His reason for being in the basement of his residence was to ingest cocaine.
The trial court properly enhanced the appellant's sentence because he employed a firearm to kill the victim. Contrary to the position taken by the appellant *313 and the state, the use of a firearm is not an element of murder in the second degree.[51] When the accused commits murder in the second degree by shooting the victim with a firearm, this sentencing factor can be used to enhance the accused's sentence.[52]
The trial court used the fact that the victim was an elderly woman as an enhancement factor. The trial court should not have used this factor to enhance the appellant's sentence. In this case, the appellant did not take advantage of the victim's age and physical disability during the commission of the offense.
In State v. Adams,[53] the Supreme Court stated that a victim is particularly vulnerable within the meaning of this enhancement factor when the victim lacks the ability to resist the commission of the crime due to age, a physical condition, or a mental condition.[54] A victim is also particularly vulnerable when his or her ability to summons assistance is impaired; or the victim does not have the capacity to testify against the perpetrator of the crime.[55] However, a finding that one of these conditions exists does not, as a matter of law, mean that this factor is automatically considered. The appellant must have taken advantage of one or more of these conditions during the commission of the crime.
The state had the burden of establishing the limitations that render the victim "particularly vulnerable."[56] The state also had the burden of establishing that the condition which rendered the victim "particularly vulnerable" was a factor in the commission of the offense. While the state established that the victim was a senior citizen and she used a cane, it failed to establish how these conditions were a factor in the commission of the offense.
This Court is convinced that the victim's age and physical disability were not a factor in the commission of the offense. If a weight lifter, football player, or any other person, male or female, who possessed adequate strength to resist a crime against the person, had entered the basement on the morning in question, that person's strength and ability would not have permitted him or her to resist the crime committed by the appellant. He would have killed any person who entered the basement on the morning in question. In short, the person's strength and ability to resist the commission of an offense would not have been a factor. No person can resist an unexpected firing of a weapon from a distance.
Finally, the trial court held that appellant's lack of hesitation in committing the *314 crime was a factor for enhancement. The trial court should not have used this factor to enhance the appellant's sentence. This Court has held that this factor should not be considered when an accused has been convicted of murder in the second degree.[57]

D.
The trial court found that one mitigating factor existed. The trial court expressed the view that the appellant should be given credit for voluntarily confessing his guilt.[58] The trial court acknowledged that if the appellant had not confessed his guilt, the crime would never have been solved.
This Court finds that there are additional mitigating factors on the face of the record. While the appellant has not raised these factors, this Court has the right to consider any factor established by the record in conducting its de novo review.[59]
The appellant expressed remorse for his conduct.[60] He acknowledged and expressed regret for the pain that he caused the family of the victim. He apologized to the victim's family. He also expressed regret for the pain that he had caused his wife and son. He was genuinely concerned about the welfare of his young son.
The appellant is also entitled to consideration for the change that he had made in his life.[61] He overcame his drug addiction. He became a model husband and parent. His family subsequently joined a church. His pastor and fellow church members testified to his involvement with the church, his efforts in assisting the operation of a homeless shelter, and his assistance to the hurricane victims in south Florida.

E.
There are two enhancement factors and three mitigating factors established by the record. In the context of this case, the sentence computed pursuant to the 1982 Act is the less onerous. Therefore, the appellant's sentence must be set accordingly.
The weight to be given the enhancement factors and mitigating factors is important. The appellant does not have a history of convictions. The pre-sentence report states that the appellant was "not known to law enforcement officers." His criminal behavior involved the use of cocaine. There is no indication that the appellant has used or otherwise been involved with cocaine or any other illicit drug for a long period of time. This factor is entitled to consideration although its weight in the context of this case should be slight.
The appellant's use of a firearm to commit the offense in question is entitled to much greater weight. The appellant carried the weapon with him at all times. Common sense dictates that the use of illicit narcotics such as cocaine and firearms are a volatile mix. If the appellant had not been using cocaine, it is highly unlikely that he would have killed the victim.
The mitigating factors are also entitled to consideration. The remorse factor is not *315 entitled to as much weight as the appellant's self-rehabilitative effort. He also is entitled to consideration for voluntarily coming forth and confessing his guilt. These factors indicate that the appellant has the ability to live a productive life in the community.
This Court is of the opinion that an appropriate sentence under the circumstances is twelve (12) years. Accordingly, the judgment of the trial court is modified to show that the appellant is sentenced as a standard offender; and the Range I sentence imposed is twelve (12) years confinement in the Department of Correction.
WADE, J., and JOHN K. BYERS, Senior Judge, concur.
NOTES
[1] The appellant admitted that he always carried a pistol. He told the TBI agent: "I always carried a Charter Arms .38, five-shot revolver with me." He killed the victim with this weapon.
[2] Tenn.R.App.P. 13(e).
[3] State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App.), per. app. denied (Tenn. 1990).
[4] State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App.), per. app. denied (Tenn. 1990).
[5] Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859, cert. denied, 352 U.S. 845, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956).
[6] State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).
[7] Cabbage, 571 S.W.2d at 835.
[8] 493 S.W.2d 474 (Tenn. 1973).
[9] Grace, 493 S.W.2d at 476.
[10] State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).
[11] Tuggle, 639 S.W.2d at 914.
[12] Since the offense was committed prior to the enactment of the Criminal Sentencing Reform Act of 1989, the law that existed at the time the offense was committed must be applied in determining whether the evidence adduced at the trial was sufficient to support his conviction for murder in the second degree.
[13] State v. Pride, 667 S.W.2d 102, 104 (Tenn. Crim. App. 1983), per. app. denied (Tenn. 1984); Fox v. State, 1 Tenn. Crim. App. 308, 316-317, 441 S.W.2d 491, 495-496, (1968), cert. denied (Tenn. 1969).
[14] State v. Keels, 753 S.W.2d 140, 143 (Tenn. Crim. App.), per. app. denied (Tenn. 1988); Humphreys v. State, 531 S.W.2d 127, 132 (Tenn. Crim. App.), cert. denied (Tenn. 1975); Bailey v. State, 479 S.W.2d 829, 833 (Tenn. Crim. App.), cert. denied (Tenn. 1972); Fox v. State, 1 Tenn. Crim. App. at 316-317, 441 S.W.2d at 495-496 (Tenn. 1969). See State v. Martin, 702 S.W.2d 560, 563 (Tenn. 1985).
[15] Humphreys v. State, 531 S.W.2d at 133; Bailey v. State, 479 S.W.2d at 834; Fox v. State, 1 Tenn. Crim. App. at 316-317, 441 S.W.2d at 495-496.
[16] Fox v. State, 1 Tenn. Crim. App. at 316-317, 441 S.W.2d at 495-496.
[17] Fox v. State, 1 Tenn. Crim. App. at 317, 441 S.W.2d at 496.
[18] State v. Martin, 702 S.W.2d at 563; Sikes v. State, 524 S.W.2d 483, 485 (Tenn. 1975); State v. Pride, 667 S.W.2d at 104; Bailey v. State, 479 S.W.2d at 833; Hornsby v. State, 479 S.W.2d 653, 655 (Tenn. Crim. App. 1971), cert. denied, (Tenn. 1972).
[19] Tenn.R.App.P. 13(e); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[20] Tenn.R.App.P. 27(a)(7) and (g).
[21] State v. Black, 745 S.W.2d 302, 306 (Tenn. Crim. App.), per. app. denied (Tenn. 1987). See State v. Groseclose, 615 S.W.2d 142, 147-148 (Tenn.), cert. denied, 454 U.S. 882, 102 S.Ct. 366, 70 L.Ed.2d 193 (1981); State v. Rollins, 605 S.W.2d 828, 831-832 (Tenn. Crim. App. 1980); Robinson v. State, 513 S.W.2d 156, 157-158 (Tenn. Crim. App.), per. app. denied (Tenn. 1974).
[22] 867 S.W.2d 750 (Tenn. Crim. App.), per. app. denied (Tenn. 1993).
[23] Braden, 867 S.W.2d at 760-761.
[24] Lewis v. State, 202 Tenn. 328, 336-337, 304 S.W.2d 322, 325-326 (1957); Collins v. State, 506 S.W.2d 179, 184 (Tenn. Crim. App. 1973), cert. denied (Tenn. 1974). See Bostick v. State, 210 Tenn. 620, 630, 360 S.W.2d 472, 476 (1962); Harper v. State, 206 Tenn. 509, 516-517, 334 S.W.2d 933, 936 (1960); Pyburn v. State, 539 S.W.2d 835, 840 (Tenn. Crim. App.), cert. denied (Tenn. 1976).
[25] State v. McKinney, 603 S.W.2d 755, 760 (Tenn. Crim. App. 1980).
[26] 603 S.W.2d 755 (Tenn. Crim. App. 1980).
[27] McKinney, 603 S.W.2d at 760.
[28] McKinney, 603 S.W.2d at 760. (cases omitted).
[29] 858 S.W.2d 879 (Tenn. 1993).
[30] Pearson, 858 S.W.2d at 884.
[31] Pearson, 858 S.W.2d at 884.
[32] Tenn. Code Ann. § 40-35-401(d) (1990).
[33] State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).
[34] State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993).
[35] Sentencing Commission Comments to Tenn. Code Ann. § 40-35-401 (1990); Ashby, 823 S.W.2d at 169; State v. Fletcher, 805 S.W.2d 785, 786 (Tenn. Crim. App. 1991).
[36] Tenn. Code Ann. §§ 40-35-103(5) and -210(b) (1990).
[37] Pearson, 858 S.W.2d at 884.
[38] Tenn. Code Ann. § 39-2-212 (1982) (repealed 1989).
[39] Tenn. Code Ann. § 40-35-109(d)(1) (1982) (repealed 1989).
[40] Tenn. Code Ann. § 40-35-109(a) (1982) (repealed 1989).
[41] Tenn. Code Ann. § 40-35-110 (1990).
[42] Tenn. Code Ann. § 40-35-118 (1990).
[43] Tenn. Code Ann. § 40-35-112(a)(1) (1990).
[44] Tenn. Code Ann. § 40-35-210(c) (1990).
[45] Tenn. Code Ann. § 40-35-402(d) (1987) (repealed 1989).
[46] Tenn. Code Ann. § 40-35-111(1) (1982) (repealed 1989) and Tenn. Code Ann. § 40-35-114(1) (1990).
[47] Tenn. Code Ann. § 40-35-111(4) (1982) (repealed 1989) and Tenn. Code Ann. § 40-35-114(4) (1990).
[48] Tenn. Code Ann. § 40-35-111(9) (1982) (repealed 1989) and Tenn. Code Ann. § 40-35-114(9) (1990).
[49] Tenn. Code Ann. § 40-35-111(10) (1982) (repealed 1989) and Tenn. Code Ann. § 40-35-114(10) (1990).
[50] See State v. Randall Keel, 882 S.W.2d 410, 419 (Tenn. Crim. App., 1994), per. app. denied (Tenn. 1994).
[51] State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992) per. app. denied (Tenn. 1993); State v. Earl Raines, 882 S.W.2d 376, 385 (Tenn. Crim. App., 1994), per. app. denied (Tenn. 1994); State v. Reedar Junior Robbins, Hardin County No. 6, slip op. at 3-4, 1991 WL 40531 (Tenn. Crim. App., Jackson, March 27, 1991), per. app. denied (Tenn. 1991).
[52] See State v. Peat, 790 S.W.2d 547, 551 (Tenn. Crim. App.), per. app. denied (Tenn. 1990) (accused, convicted of murder in the second degree, used a shotgun to kill the victim); State v. Witherspoon, 769 S.W.2d 880, 884 (Tenn. Crim. App. 1988), per. app. denied (Tenn. 1989) (accused, convicted of assault with intent to commit first degree murder, used a shotgun to shoot the victim).

There are several unreported cases where the use of a firearm was used to enhance a sentence when the accused was convicted of murder in the second degree. See, e.g., State v. Earl Raines, 882 S.W.2d 376 (Tenn. Crim. App. 1994), per. app. denied (Tenn. 1994); State v. John Michael Armitage, Knox County No. 03-C-01-9203-CR-00071, slip. op. at 17-18, 1993 WL 317463 (Tenn. Crim. App., Knoxville, August 23, 1993), per. app. denied (Tenn. 1994); State v. Junior Belcher, Hamblen County No. 03-C-01-9110-CR-00352, slip. op. at 3, 1992 WL 70936 (Tenn. Crim. App., Knoxville, April 10, 1992); State v. Christopher Coffee, Davidson County No. 01-C-01-9103-CR-00066, slip op. at 4, 1991 WL 201634 (Tenn. Crim. App., Nashville, October 10, 1991); State v. James K. Boykin, Jr., Overton County No. 01-C-01-9106-CC-00174, slip. op. at 3, 1991 WL 194150 (Tenn. Crim. App., Nashville, October 2, 1991); State v. Reedar Junior Robbins, Hardin County No. 6, slip op. at 3-4, 1991 WL 40531 (Tenn. Crim. App., Jackson, March 27, 1991), per. app. denied (Tenn. 1991). In State v. Jerry E. Cook, Monroe County No. 117, slip op. at 2, 1989 WL 91604 (Tenn. Crim. App., Knoxville, August 16, 1989), per. app. denied (Tenn. 1989) (a conviction for murder in the second degree, using a butcher knife to kill the victim was used to enhance the sentence).
[53] 864 S.W.2d 31 (Tenn. 1993).
[54] Adams, 864 S.W.2d at 35.
[55] Adams, 864 S.W.2d at 35.
[56] Adams, 864 S.W.2d at 35.
[57] See, e.g., State v. John Michael Armitage, Knox County No. 03-C-01-9203-CR-0071, slip op. at 15, 1993 WL 317463 (Tenn. Crim. App., Knoxville, August 23, 1992), per. app. denied (Tenn. 1994); State v. Jeffrey Allen Partin, Franklin County No. 01-C-01-9202-CC-00054, slip op. at 7 n. 1, 1992 WL 217775 (Tenn. Crim. App., Nashville, September 11, 1992); State v. Tony Von Carruthers, Shelby County No. 02-C-01-9102-CR-00019, slip op. at 2, 1991 WL 147946 (Tenn. Crim. App., Jackson, August 7, 1991); State v. Robert Calvin Daniels, Davidson County No. 01-C-01-9007-CR-00169, slip. op. at 7, 1991 WL 51430 (Tenn. Crim. App., Nashville, April 11, 1991), per. app. denied (Tenn. 1991).
[58] Tenn. Code Ann. § 40-35-110(13) (1982) (repealed 1989) and Tenn. Code Ann. § 40-35-113(13)(1990).
[59] See State v. Adams, 864 S.W.2d at 34; State v. Pearson, 858 S.W.2d at 884-885.
[60] Tenn. Code Ann. § 40-35-110(13) (1982) (repealed 1989) and Tenn. Code Ann. § 40-35-113(13) (1990). See State v. Buttrey, 756 S.W.2d 718, 722 (Tenn. Crim. App.), per. app. denied (Tenn. 1988); State v. Terrance Maurice Moore, Madison County No. 02-C-01-9306-CC-00126, slip. op. at 6, 1994 WL 245481 (Tenn. Crim. App., Jackson, June 8, 1994).
[61] Tenn. Code Ann. § 40-35-110(13) (1982) (repealed 1989) and Tenn. Code Ann. § 40-35-113(13) (1990).