IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 2000 Session

## STATE OF TENNESSEE v. JAMES CHRISTOPHER LEWIS

**Direct Appeal from the Criminal Court for Sullivan County
Nos. S40, 985; S40,986; S40,987     R. Jerry Beck, Judge**

**No. E1999-00802-CCA-R3-CD**
**September 18, 2000**

The defendant entered an <u>Alford</u> plea to one count of attempted rape and two counts of sexual battery. He received a sentence of eight years as a Range II offender for the attempted rape and two years, as a Range I offender, for each of the sexual battery charges. All sentences were to be served concurrently. The defendant's request for a suspended sentence was denied after a lengthy hearing, and he raises that denial as the sole issue on appeal. Based upon our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and THOMAS T. WOODALL, JJ., joined.

T. Martin Browder, Jr., Johnson City, Tennessee, for the appellant, James Christopher Lewis.

Paul G. Summers, Attorney General and Reporter; R. Stephen Jobe, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Mary Katherine Harvey, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, James Christopher Lewis, entered an <u>Alford</u> plea in Sullivan County Criminal Court to one count of attempted rape and two counts of sexual battery. According to his negotiated plea agreement with the State, he received a sentence of eight years for attempted rape, a Class C felony, as a Range II, multiple offender; and two years for each sexual battery charge, Class E felonies, as a Range I, standard offender. All sentences were ordered to be served concurrently for an effective sentence of eight years. The defendant preserved his right to a hearing to determine under what conditions his sentence would be served. After a full hearing, the trial court denied probation, and the defendant was ordered to serve his sentences in confinement. The denial of probation is the single issue presented in this appeal.

Based upon our review, we affirm the judgment of the trial court.

**FACTS**

The facts of the offenses were brought out in detail during the extensive probation hearing in this matter. The victim was the fourteen-year-old daughter of Holly Deyo, a woman whom the defendant met in Nashville shortly after the dissolution of his first marriage, apparently in 1995. At the probation hearing, the defendant=s mother testified as to certain of the facts. She said that her son had attempted suicide while living with Ms. Deyo in Nashville in 1996, and she and the defendant=s father brought the defendant back to their home in Kingsport. Within a few months, Ms. Deyo and her daughter, LT,[1] moved to Kingsport, and subsequently moved into an upstairs apartment in the home of the defendant's parents. The defendant, according to his mother=s testimony, Amaintained his residency downstairs." On September 7, 1997, Ms. Deyo gave birth to a son, fathered by the defendant. The defendant's mother also testified that her son was still occasionally abusing alcohol.

The events to which the defendant pled guilty took place over a period from September to November of 1997, when the victim was fourteen and the defendant was thirty-one years old. The most serious charges took place on November 17, 1997. Dr. James Michael Adler, Clinical Director of Counseling and Consultation Services, Inc., noted the following in his written assessment of the defendant:

> James reported that he became involved romantically with the victim's mother. During the course of this relationship, James acknowledged that while wrestling with (ex-girlfriend's daughter) she pushed his hand to her crotch and he grabbed her. James stated that his victim almost always ran around the house in her underwear or naked. James stated that he fondled her and digitally penetrated her two to three times.

According to the presentence report, the defendant stated that what he did was "never intended as sexual." He also stated that he accepted the plea agreement so that the victim "would not have to testify in a trial where her prior sexual history and moral behavior would be public."

Detective Lisa Christian, the defendant's probation officer,[2] stated in the presentence report, "I'm not sure he understands that he did anything wrong. I get the feeling that he thinks it was the

---

[1] It is the policy of this court to use initials only in identifying a minor victim of sexual abuse.

[2] The trial court placed the defendant on bond supervision on September 29, 1998, after the State requested that the defendant's bond be modified to require supervision by a probation counselor and no contact with the victim because the defendant had had contact with the victim and had also been charged on March 8, 1998, with driving while intoxicated, second offense, and leaving the scene of an accident.

victim's fault." The defendant's mother admitted under cross-examination that she had told Detective Christian that "twenty (20) years was a long time to pay for copping a feel."

In addition to his clinical assessment included in the record, Dr. Adler considered the defendant to have a moderate to low chance of reoffending, noting that the defendant had only one victim; that the victim was adolescent; and that the level of intrusiveness – digital penetration – was at the "lower end of, of the types of sexual behaviors that we see." Dr. Adler also noted that the defendant's highest arousal pattern was to adolescent females. Dr. Adler also testified that arousal is the strongest predictor of recidivism but that in the defendant's case this was manageable with supervision and treatment. According to Dr. Adler, the defendant had "groomed the victim" by beginning with fondling, and that, had he not been stopped, he would have progressed further. When asked on cross-examination if taking responsibility for his actions would be an important factor in the defendant's amenability to treatment, Dr. Adler responded that if the defendant was unable to stop the victim blaming and to take responsibility for his actions, treatment would fail.

The defendant testified during the probation hearing, setting out the details of his background as well as some details of the offenses. He testified as to the mental health treatment which he had received and his suicide attempt. Additionally, he testified as to the emotional and personal costs to him that had resulted from the charges.

A number of witnesses testified on behalf of the defendant during the probation hearing. Brenda Dykes and Faye Young, both of whom had been neighbors of the defendant for a number of years, testified in support of his request for probation. In addition, acquaintances Randy Earl Schramlin, Sharon Schramlin, Shannon Seay, Carolyn Jane Ledford, Mary Ellen Beebe, and Mary Ellen Richmond testified and supported the defendant's request. Mary Jane Brown of the Sullivan County Department of Children's Services testified that the defendant had not presented a problem during the court-ordered visits with his son, J.D. Additionally, the defendant's father and sister testified in his behalf.

## ANALYSIS

### I. Standard of Review

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App.), perm. app. denied (Tenn. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993). If the trial court followed the

statutory sentencing procedures, giving due consideration and proper weight to the relevant factors and principles under the 1989 Sentencing Act, we cannot disturb the sentence, even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App.), perm. app. denied (Tenn. 1987).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentences are erroneous. Sentencing Commission Cmts. to Tenn. Code Ann. § 40-35-401; Ashby, 823 S.W.2d at 169; Butler, 900 S.W.2d at 311.

## II. Denial of Probation

The defendant's sole issue on appeal is that he should have been granted probation. He contends that the trial court failed to consider both the principles of confinement pursuant to the 1989 Sentencing Act and all relevant facts and circumstances. If this were true, our review would be *de novo* with no presumption that the determinations of the trial court were correct. The State argues that the trial court specifically noted the applicable sentencing principles and all relevant facts and circumstances and, accordingly, we should review the ruling of the trial court with a presumption of correctness. We concur with the State's position; thus, our review is *de novo* with a presumption that the determinations of the trial court are correct.

Regarding the defendant's request for probation, the trial court reviewed the purposes of the 1989 Act as set out in Tennessee Code Annotated Section 40-35-102 and determined that the defendant was not entitled to a presumption that he was a favorable candidate for alternative sentencing options because he was sentenced as a Range II, multiple offender, a class excluded from the statutory presumption. Additionally, the trial court reviewed Tennessee Code Annotated Section 40-35-303(a) and noted that the defendant was eligible for probation, having received a sentence of eight years. The trial court also reviewed the guidelines for eligibility in the Community Corrections Program and noted that because the defendant had been sentenced to a crime against the person, he was ineligible according to Tennessee Code Annotated Section 40-36-106(a)(2).

The trial court reviewed the sentencing considerations set out in Tennessee Code Annotated Section 40-35-103. In this regard, the trial court considered the seriousness of the offense, the defendant's potential for rehabilitation or treatment, the required evaluation mandated by Section 39-13-705 for sex offenders, and the testimony of Dr. Adler. The trial court reviewed Tennessee Code Annotated Section 40-35-114 and found two enhancement factors: "(7) The offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement;" and "(15)

The defendant abused a position of public or private trust, or used a special skill in a manner that significantly facilitated the commission or the fulfillment of the offense[.]" We agree that these factors were properly applied. As to factor (7), Dr. Adler testified and stated in his report that the defendant's strongest arousal was for adolescent females, the group which includes the victim. Thus, although this factor could not be used to enhance a sentence for sexual battery because it duplicated an essential element of the offense, State v. Kissinger, 922 S.W.2d 482, 489 (Tenn. 1996), it was properly applied to the rape conviction. Factor (15) was properly applied because the defendant, as the boyfriend of the victim's mother, the father of the victim's half-brother, and with all of the parties living under the same roof, clearly occupied a position of private trust as to the victim. Kissinger, 922 S.W.2d at 489. No mitigating factors were presented or found by the trial court. It was appropriate for the trial court to consider the mitigating and enhancement factors because they are relevant as a Section 40-35-103 consideration. See State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). The trial court also considered the defendant's depression, alcoholism, and prior record, particularly the defendant's poor response to past applications of measures less restrictive than confinement when the defendant violated the law. The defendant's educational and employment record and the degree of support from family and friends were taken into consideration by the trial court. Based upon all of this, the trial court denied probation to the defendant.

Our review of the entire record indicates that the trial court met the requirements of Ashby, in that it considered sentencing principles and all relevant facts and circumstances. Our review, therefore, presumes that the trial court correctly denied probation. The defendant bears the burden of showing that the determination of the trial court was improper. Ashby, 823 S.W.2d at 169.

The defendant does not challenge the trial court's determination that he is ineligible for the statutory presumption of favorable candidacy for probation or the application of the enhancement factors. The defendant asserts instead that the trial court failed to make specific findings concerning the considerations for sentences involving confinement as set out in Section 40-35-103(1) and (5), and therefore improperly based confinement on these considerations.

Subsection (1) states:

> (1) Sentences involving confinement should be based on the following considerations:
>
> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Subsection (5) states:

The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed. The length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]

The record shows that the trial court specifically stated that the defendant had no record of felonies and that his record of misdemeanor violations did not merit the characterization of "a long history of criminal conduct." As to subsection (B), the trial court did rely on the seriousness of the crime and noted that the defendant, although pleading guilty to attempted rape, did in fact penetrate the victim on two or three occasions. A trial court may consider what the evidence shows actually happened rather than be restricted to considering only the crime to which the defendant pled guilty. See State v. Hollingsworth, 647 S.W.2d 937, 939 (Tenn. 1983) ("It is also proper for a trial court to look behind the plea bargain and consider the true nature of the offenses committed."). The denial of probation has previously been justified solely on the circumstances of the offense when they were of such a nature as to outweigh all other factors which might favor probation. See State v. Travis, 622 S.W.2d 529, 533 (Tenn. 1981). "Thus, even though the defendant might possess full capabilities for rehabilitative alternative sentencing, the trial judge [is] entitled under the law to exercise his discretion to impose a period of confinement under T.C.A. § 40-35-103(1)(B), provided the record adequately supports the weight he gave this particular sentencing consideration." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Here, the record shows that the defendant "groomed" the victim over a period of months and penetrated her on two or three occasions. Although the defendant implies consent, the record shows that the victim finally went to her mother, causing the defendant's family to insist that he move out of the house. Also, the defendant continued to have contact with the victim, even after he was placed on bond for these offenses. We conclude that the evidence adequately supports the weight the trial court gave this factor.

As to subsection (C), the trial court reviewed the defendant's criminal record, which dated back to 1989, and noted that it was not "pristine." The trial court stated that the defendant had prior convictions consisting of public intoxication, disorderly conduct, driving without a license, reckless driving, DUI, possession of a deadly weapon with intent to go armed, and possession of marijuana – all crimes for which the defendant had received suspended sentences. According to the trial court, the defendant "has experiences before the Court, has previously been placed on probation on more than one occasion. Those would be negative factors also." The record also shows that, while released on bond for the present offenses, the defendant was charged with DUI, second offense, and leaving the scene of an accident.

Finally, the defendant contends that the trial court should have found that he had potential for rehabilitation and treatment. On this issue, the trial court pointed to the lack of empathy for the victim and victim blaming exhibited by the defendant. A defendant's failure to accept responsibility for his crimes is germane to his potential for rehabilitation. Zeolia, 928 S.W.2d at 463. The trial court also noted the defendant's continued abuse of alcohol, even after completing an intensive outpatient alcohol treatment program on March 11, 1999. The defendant admitted to an episode with alcohol in April 1999. The defendant also stated at the hearing, "Now as far as the allegations went, that was why I made an Alford plea, because the allegations weren't even close to being true but there was inappropriate contact on my behalf." Later, the defendant, in evaluating the costs of this offense, focused almost exclusively on himself, stating that "it's just cost me everything." Although the trial court gave a great deal of weight to Dr. Adler's testimony concerning the defendant's amenability to treatment, the court noted that Dr. Adler's testimony only established that the defendant's chances of reoffending were moderate to low with treatment. The record indicates that the trial court appropriately weighed the defendant's potential for rehabilitation or treatment. Accordingly, there is substantial evidence to support the trial court's denial of probation.

## CONCLUSION

It is clear from our review of the entire record that the trial court considered the relevant principles of the Criminal Sentencing Reform Act of 1989 and all relevant facts and circumstances of this case. Our *de novo* review has, therefore, been conducted with a presumption that the determinations of the trial court are correct. We conclude that the defendant has failed to meet his burden of showing that the sentence was improper and, accordingly, affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE