IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 29, 2006

## STATE OF TENNESSEE v. RITA KAY VINES

**Direct Appeal from the Criminal Court for Washington County**
**Nos. 30447B, 30463A      Robert E. Cupp, Judge**

_____

**No. E2005-01240-CCA-R3-CD - Filed May 18, 2006**

_____

The defendant, Rita Kay Vines, pled guilty to accessory after the fact, aggravated burglary, theft over $500, theft under $500, vandalism under $500, and three counts of forgery in exchange for a total effective sentence of eight years as a Range I, standard offender, with the manner of service to be determined by the trial court.  On appeal, she argues that the trial court erred in denying alternative sentencing.  Based upon our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and J.C. MCLIN, JJ., joined.

Gene Scott, Johnson City, Tennessee, for the appellant, Rita Kay Vines.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Joe C. Crumley, Jr., District Attorney General; and Dennis D. Brooks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On September 8, 2004, the Washington County Grand Jury returned a one-count indictment in Case No. 30447B charging the defendant with especially aggravated robbery and a seven-count indictment in Case No. 30463A charging her with aggravated burglary, theft of property over $500, vandalism under $500, three counts of forgery under $1000, and theft of property under $500.  On March 7, 2005, the defendant entered guilty pleas to accessory after the fact in Case No. 30447B, with an agreed sentence of two years, and to aggravated burglary, theft over $500, vandalism under $500, three counts of forgery, and theft under $500 in Case No. 30463A, with an agreed total sentence of six years to be served consecutively to the two-year sentence in Case No. 30447B.

The facts surrounding the defendant's offense in Case No. 30447B, as set forth in the Affidavit of Complaint, were as follows:

> On 6/6/04 at aprox [sic] 11:30 AM the above named defendant facilitated the especially aggravated robbery and aggravated burglary of (victim) Wayne Story 317 Depot St. Apt. #1 by staking Mr. Story's residence out with the co-defendants and then standing by with a get-away vehicle a block down the street at Deihl Trucking. When the co-defendants returned[,] the above named defendant fled the area. The above named defendant had complete knowledge of the above described crime.

The facts surrounding the defendant's offenses in Case No. 30463A, as set forth in the Affidavits of Complaint, were:

> On [March 21, 2004] at approx. 10:00 p.m. the defendant and codefendants went to the victim's residence located at 687 Oak Grove Rd. in Washington Co. [The defendant] and her son Josh knocked on the front and rear doors. After receiving no answer, they broke a window to the front door and made entry. A DVD player, play station, CDs and DVDs were taken. Total value including damage to the door totals $1320.00.

> On May 28, 2004 the defendant forged a check under the name of Tanya Adams at Moody's Discount Pharmacy in Johnson City. The amount of the check was for $44.28. On the same date the defendant forged a second check at White's Fresh Foods Grocery on N. Roan St. in Johnson City. The amount of that check was $96.07. On May 29, she forged a check for $20 at Food City in Boones Creek.

At the April 29, 2005, sentencing hearing, the thirty-eight-year-old defendant testified that she had no prior convictions and was currently employed. She acknowledged that her son, Joshua Salyers, was a codefendant, and that her daughter was in foster care. She said she had last used cocaine in November 2004 and marijuana about two months prior to the hearing.

Regarding Case No. 30447B, the defendant said that she was living with a codefendant, Gordon Haws, at the time of the robbery and that she had been "pretty much made to" participate in the robbery. She described Haws as "psychotic" and said he had put a gun to her head on previous occasions and had threatened her and her child. She denied knowing that her son, Salyers, had brought a gun with him on the day of the robbery. Haws told her that he wanted to "go rob people" and she went along because she was afraid of him. Salyers and Haws told her that Haws had pushed the victim's door open and demanded the victim's wallet. When the victim tried to grab the gun, Salyers hit him in the head with it. The defendant acknowledged that she "drove the car away" after the robbery. The defendant said that the victim, "an old man, a little man," was a former neighbor and that it was her son's idea to rob him. She said Haws and Salyers split the $40 they took from the victim and denied that she had received any of the money.

Regarding the forgeries in Case No. 30463A, the defendant testified that her daughter's boyfriend had given her his mother's checkbook and that she had forged three checks from it to buy medication for her daughter. Concerning the aggravated burglary, the defendant testified that she went with her codefendants, Jenilee Christie and Joshua Salyers, to the home of Christie's boyfriend where Christie and Salyers used a baseball bat to break out the window in the front door and then stole a PlayStation, CDs, and movies. The defendant admitted that she "helped" steal the items, saying she had done so because she "was just real upset over [her] husband, and [she] just wasn't thinking straight."

Investigator Mike Lewis of the Jonesborough Police Department testified that when he arrived at the scene of the robbery, the victim, Wayne Story, was being treated by emergency medical personnel. Lewis located a witness who identified Salyers as one of the robbers. He later spoke to the defendant who told him that Salyers could not have been involved in the robbery because a friend had spent the night with him and they had left the next morning for his uncle's house in Bristol. The defendant ultimately disclosed Salyers' whereabouts and he was arrested. Haws later gave the police a statement, saying that he, the defendant, and Salyers had planned the robbery and that the defendant had driven them to the victim's residence. Lewis said that the victim received stitches to his head as a result of being hit with the pistol.

At the conclusion of the hearing, the trial court ordered that the defendant serve her eight-year sentence in confinement. Thereafter, the defendant filed a timely notice of appeal to this court.

## ANALYSIS

The defendant's sole issue on appeal is whether the trial court erred in denying alternative sentencing. When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by

the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S .W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous.

The Tennessee Criminal Sentencing Reform Act of 1989, enacted to "promote justice," Tenn. Code Ann. § 40-35-102 (2003), provides that the sentence imposed upon an offender should be the "least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4). Thus, trial judges are "encouraged" to use "alternatives to incarceration that include requirements of reparation, victim compensation and/or community service." Tenn. Code Ann. § 40-35-103(6). An especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6).

If an offender meets the criteria under Tennessee Code Annotated section 40-35-102(6), the trial court "must presume that he is subject to alternative sentencing." Ashby, 823 S.W.2d at 169. However, if the court is presented with "evidence sufficient to overcome the presumption, then it may sentence the defendant to confinement according to the statutory provision." Id. The presumption in favor of alternative sentencing may be overcome by facts contained in the presentence report, evidence presented by the State, the testimony of the accused or a defense witness, or any other source, provided it is made part of the record. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996).

Evidence sufficient to overcome the presumption in favor of alternative sentencing includes evidence showing that "[c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct," "[c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses," or "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." Tenn. Code Ann. § 40-35-103(1)(A)-(C); see Ashby, 823 S.W.2d at 169.

In denying alternative sentencing, the trial court stated:

Well, I . . . had some options, but . . . [the defendant] takes them away from me when she gets up here and won't accept any responsibility for any of her conduct. She finally did because she was pinned to the wall on it. Denies any involvement. You know, part of rehabilitation is to be able to get up here and tell the truth on something, and she simply will not do it. . . . She's a drug addict, that's, you know, drug addict, and her children are drug addicts. . . . She's got a LPN nursing

-4-

certificate, and just blew it – just closed, I mean – had nurse burn out. So, you give up nursing and go to sticking up people, and taking your kids down to rob them, and all that stuff. Woodridge, checked myself in to get off of drugs. It didn't work. She went right back to where she was. They just keep you up seven days to clean out your system. That's her cope-out [sic] for not doing anything about the problem. She got [sic] anxiety and depression. She takes Xanax, something all the time. Started drinking at 14 a couple of beers, a glass of wine every couple of months, marijuana and cocaine. Marijuana, of course, she do[es]n't like the way it made me feel but, yet, she admits that she smoked it as much as two months ago. . . .

. . . .

. . . Whether or not the defendant might reasonably be expected to be rehabilitated, and the defendant's potential, or lack of potential for rehabilitation including the risk during the period of probation the defendant will commit another crime. When you're not candid with the court, and you can't accept responsibility that takes away the potential for rehabilitation. The court finds that she has none in either case. Whether or not a reason appears the defendant will abide by the terms of probation. If she'll lie to you under oath, and not accept responsibility under oath there is no way that she would abide by the terms of probation once she left this facility. Whether o[r] not the interest of society is being protected from possible future conduct from her. And I have a responsibility to this community to do that, and she's a nuisance to this community. Whether or not a sentence of full probation would unduly depreciate the seriousness of these offenses, and it would in both cases. And whether or not confinement is particularly suited to provide an effective deterrent to others. Nothing provides an effective deterrent to anybody. She's presumed to be a . . . favorable candidate for alternative sentencing, but, if you look at – unless there's evidence to the contrary found in 40-35-103. Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct. She doesn't fit that category. Confinement is necessary to [a]void depreciating the seriousness of the offense is applicable to her, and not only that, that lack of truthfulness on this witness stand just gives this court all the ammunition in the world it needs to say she's not an appropriate candidate for alternative sentencing. The sentences are ordered served.

The defendant argues that the trial court did not consider "the factor of whether or not less restrictive measures have often or recently been unsuccessfully applied" to the defendant. However, the transcript of the sentencing hearing shows that the trial court was well aware of the fact that the defendant had not been incarcerated before and, thus, had not been subject to alternative sentencing. Further, she argues on appeal that the evidence does not support the trial court's statement that she was a leader in the offenses. The record shows that the trial court made this observation in finding that the defendant failed to accept responsibility for her role in the offenses, as well as not being

-5-

truthful at the sentencing hearing.  We conclude that the record amply supports the trial court's denial of alternative sentencing for the defendant.

## <u>CONCLUSION</u>

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court.


_____
ALAN E. GLENN, JUDGE