IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 1, 2011 at Jackson

## STATE OF TENNESSEE v. LARRY ALAN WHITED and WILLIAM HENRY RUTHERFORD

**Direct Appeal from the Criminal Court for Sumner County**
**No. 186-2003      Dee David Gay, Judge**

**No. M2010-01188-CCA-R3-CD - Filed June 1, 2011**

The co-defendants, Larry Alan Whited and William Henry Rutherford, appeal their resentencing, which resulted in their receiving effective sentences of forty-five years and twenty-seven years, respectively. Both defendants argue on appeal that the trial court misapplied enhancement factors, weighed the only applicable enhancement factor too heavily, and failed to apply an appropriate factor in mitigation. Following our review, we conclude that the trial court committed no error by not applying any factors in mitigation but that its use of the defendants' juvenile adjudications and violations of probation to enhance the sentences violates the principles announced in Blakely v. Washington, 542 U.S. 296 (2004). Accordingly, we modify the defendants' respective sentences for second degree murder to twenty-one years, one year beyond the presumptive midpoint of twenty years, and their sentences for reckless endangerment to one year and six months, six months beyond the presumptive minimum sentence of one year. In addition, we modify Whited's aggravated assault sentences to four years, one year beyond the presumptive minimum sentence of three years. This case is, therefore, remanded to the trial court for entry of modified sentences in accordance with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed as Modified**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

David R. Howard, Gallatin, Tennessee, for the appellant, William Henry Rutherford.
Randy P. Lucas, Gallatin, Tennessee, for the appellant, Larry Alan Whited.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; Lawrence R. Whitley, District Attorney General; and Sallie Wade Brown,

Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS and PROCEDURAL HISTORY**

Following a joint trial before a Sumner County jury, Whited was convicted of second degree murder, reckless endangerment, and three counts of aggravated assault, and Rutherford was convicted of second degree murder and reckless endangerment. The trial court sentenced Whited to consecutive terms of twenty-five years for the murder conviction, two years for the reckless endangerment conviction, and six years for each of the aggravated assault convictions, for an effective term of forty-five years in the Department of Correction. The trial court sentenced Rutherford to consecutive terms of twenty-five years for the second degree murder conviction and two years for the reckless endangerment conviction, for an effective term of twenty-seven years. In their direct appeals, both defendants relied on the holding of the United States Supreme Court in Blakely v. Washington, 542 U.S. 296 (2004), to argue that the trial court's application of enhancement factors violated their Sixth Amendment rights to trial by jury. We rejected that claim based on our supreme court's holding in State v. Gomez, 163 S.W.3d 632, 661 (Tenn. 2005), and affirmed the convictions and sentences. Our supreme court subsequently denied the defendants' applications for permission to appeal. State v. Larry Allen Whited and William Henry Rutherford, No. M2005-00167-CCA-R3-CD, 2006 WL 548228, at *1, *18 (Tenn. Crim. App. Mar. 7, 2006), perm. to appeal denied (Tenn. Aug. 28, 2006).

The first direct appeal opinion provides the following account of the crimes:

The crimes in this case occurred in Gallatin on the evening of January 12, 2003. Whited confronted Rhonda Demoss at her residence about statements she allegedly made to his wife suggesting he was having an extramarital affair. Rutherford accompanied Whited to the Demoss residence. Several other people were present at Rhonda Demoss' home when the Defendants arrived: Wayne Demoss, Rhonda Demoss' husband; Charlie Demoss, Wayne Demoss' brother; Brandon Williams, a family friend; April Murdock, Wayne Demoss' cousin who lived with Rhonda and Wayne; Heather Engeman, a family friend; and Triston Bolton and Tyler, two young children who Rhonda Demoss babysat. Both Defendants were armed with weapons when they arrived at the Demoss residence. Altercations ensued during which Mr. Williams and Charlie Demoss were shot. Mr. Williams, who was twenty years old, died as a result of his wounds; Charlie Demoss was not fatally wounded and was able to flee from the home and seek help. The Defendants

fled the premises, but they were arrested the following day.

The following is a summary of the trial testimony. Rhonda Demoss and her family were friends with both of the Defendants. When the Defendants knocked on Ms. Demoss' front door, Charlie Demoss opened the door and allowed them inside. The Defendants appeared to be angry. Once inside, Whited approached Wayne Demoss, who was sitting in a reclining chair, pointed his SKS assault rifle at him, and demanded money. Because they knew each other, Wayne Demoss thought Whited was just joking around, so he stood up and pushed the rifle away. However, Whited said he was not playing, and he aimed his rifle back at Wayne Demoss' face. Wayne Demoss thought: "I was fixing to die." Whited then directed Rutherford, who was holding a 9-millimeter Ruger semiautomatic handgun, to shoot Wayne Demoss. At this point, Charlie Demoss attempted to intervene, and he initially succeeded in getting the gun from Rutherford. During the ensuing struggle, Rutherford pulled the gun away from Charlie Demoss' hand and shot him in the side. Charlie Demoss ran upstairs; Wayne Demoss went into the kitchen to quiet the dogs but then "slipped out the back door to try to get help."

Ms. Demoss was upstairs checking on Triston when she saw Charlie Demoss. After learning he had been shot, Ms. Demoss told her brother-in-law he had to leave, so they pushed out the window screen. He then jumped from the second-story bedroom window and ran to get help. Meanwhile, Ms. Demoss grabbed Triston and was on her way to Ms. Murdock's bedroom to hide him in the closet where Ms. Murdock had hidden Tyler when Whited came up the stairs. Whited pointed his rifle at Ms. Demoss and yelled at her to put the baby down. Triston was still crying after hearing the gunshot that struck Charlie Demoss.

While standing at the top of the steps with his rifle pointed at her face, Whited questioned Ms. Demoss about why she told his wife earlier that day that he was cheating on her. Whited told Ms. Demoss that she owed him $2,000 because his wife destroyed some of his belongings after hearing about his alleged affair. According to Ms. Demoss, Whited had a "look in his eyes. . . . Like he was fixing to blow my head off or evil. Not a look I had ever seen on his face before." Whited was yelling at Ms. Demoss the entire time, and she thought to herself, "He was fixing to blow my brains out." Ms. Murdock and Ms. Engeman were standing near Ms. Demoss. Ms. Murdock begged Whited not to hurt anyone. Whited pointed his rifle at her as well and yelled for her to keep quiet. Ms. Demoss noticed Mr. Williams "creeping up" the

stairs behind Whited. Whited turned around, pointed the rifle at Mr. Williams, and yelled at Rutherford to "come get this bitch." Mr. Williams started backing down the stairs. Ms. Demoss and Ms. Murdock then observed Rutherford approach Mr. Williams, point his handgun at his head, and lead him around the corner and out of view.

After Rutherford led Mr. Williams down the stairs, Ms. Demoss heard three gunshots within what "seemed like a matter of seconds." Ms. Murdock also heard the gunshots "right after" Rutherford led Mr. Williams down the stairs and out of their sight. After hearing the gunshots, Whited looked Ms. Demoss in the eyes, then turned and ran down the stairs. "And then just a couple of seconds after he got down there, [Ms. Demoss] heard a different boom. And then [she] heard one of them say, 'Let's bounce.'" When she went downstairs after the Defendants left the home, Ms. Demoss saw Mr. Williams lying on the kitchen floor. He looked at her and begged her not to let him die. Lying on the floor next to Mr. Williams was a knife, which Ms. Demoss placed on the counter top. Ms. Engeman and Ms. Murdock stayed in the kitchen with Mr. Williams while Ms. Demoss ran next door for help. Mr. Williams said to Ms. Murdock, "L.C. and Will. L.C. and Will. William Rutherford did this." L.C. is Whited's nickname.

Id. at *1-2.

In their subsequent petitions for post-conviction relief, Rutherford and Whited again alleged that the trial court's application of enhancement factors violated their rights to trial by jury. Based on our supreme court's holding in State v. Gomez, 239 S.W.3d (Tenn. 2007) ("Gomez II"), the post-conviction court agreed and consequently granted both Rutherford and Whited post-conviction relief in the form of a new sentencing hearing solely to determine the lengths of their sentences.

Both defendants opted to be resentenced under the law as it existed at the time of their offenses. No new evidence was presented at the hearing; instead, the trial court relied on its review of the transcripts of the trial and previous sentencing hearing, as well as the defendants' presentence reports, which reflected that both defendants had extensive juvenile records. The trial court found two enhancement factors applicable to Rutherford's convictions: his criminal history and the fact that he had violated probation, as evidenced by a probation violation report that had been filed on him, and which was subsequently dismissed by the general sessions court. See Tenn. Code Ann. § 40-35-114(2), (9) (2003). Finding no applicable mitigating factors, the court sentenced Rutherford as a Range I, standard offender to the maximum sentence of twenty-five years at 100% for the second

degree murder conviction and two years at 30% for the reckless endangerment conviction. The order of consecutive sentencing remained in place, resulting in an effective sentence of twenty-seven years in the Department of Correction.

With respect to Whited's convictions, the trial court again found two enhancement factors applicable: the defendant had a history of criminal convictions or criminal behavior in addition to those necessary to establish his range, and the defendant committed the offenses while on probation from another offense. See Tenn. Code Ann. § 40-35-114(2), (14). As in Rutherford's case, the trial court found no mitigating factors applicable. Accordingly, the trial court sentenced Whited as a Range I, standard offender to the maximum sentence of twenty-five years at 100% for the second degree murder conviction; six years at 30% for each of the aggravated assault convictions; and two years at 30% for the reckless endangerment conviction. All of the sentences were to be served consecutively, for a total effective sentence of forty-five years in the Department of Correction.[1]

## ANALYSIS

Both defendants contend that the trial court placed undue emphasis on their juvenile adjudications in applying the enhancement factor of their previous criminal history, improperly enhanced their sentences based on their alleged probation violations, and erroneously failed to apply as a factor in mitigation that they lacked substantial judgment due to their youth. The State concedes that the trial court erred by applying enhancement factors based on Rutherford's prior unwillingness to comply with a sentence involving release into the community and Whited's commission of the offenses while on probation, because those factors were not found by the jury. The State contends, however, that the error was harmless beyond a reasonable doubt because "the probation violations . . . are demonstrated in the record and the sentences are otherwise justified by [the defendant's] criminal convictions and admitted criminal conduct."

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the

---

[1]At the sentencing hearing, the trial court announced that Whited's effective sentence was forty-seven years in the state penitentiary. It is obvious, however, that the trial court simply miscalculated when adding the sentences.

determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). Because we agree with the defendants that the trial court misapplied enhancement factors, our review is *de novo* with no presumption of correctness given to the trial court's sentencing determinations. See State v. Carter, 254 S.W.3d 335, 345 (Tenn. 2008).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses, (h) any statements made by the accused in his own behalf, and (i) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103,-210; State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

In Blakely v. Washington, 542 U.S. 296 (2004), the United States Supreme Court held that a fact other than that of a prior conviction may not be used to enhance a defendant's sentence unless proven to a jury beyond a reasonable doubt or admitted by the defendant. Id. at 301; see also Apprendi v. New Jersey, 530 U.S. 466, 488 (2000). "[T]he 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. at 303 (emphasis omitted). Thus, we agree with the defendants that the trial court erred by applying enhancement factors (9) and (14) to their respective convictions. We further agree that the trial court weighed their criminal history too heavily by relying on their extensive records of juvenile adjudications, as this court has previously concluded that juvenile adjudications, which differ fundamentally from criminal convictions, do not qualify as prior convictions under Blakely. State v. Calvin Jerome Oliver, No. M2008-01824-CCA-R3-CD, 2010 WL 681377, at *14 (Tenn. Crim. App. Feb. 26, 2010); see also State v. Brandon Wallace, No. W2003-01967-CCA-R3-CD, 2005 WL 195086, at *10 (Tenn. Crim. App. Jan. 28, 2005), perm. to appeal denied (Tenn. May 23, 2005); State v. Christopher Kirkendall, No. W2004-00784-CCA-R3-CD, 2004 WL 2083760, at *4 (Tenn. Crim. App. Sept. 16, 2004), perm. to appeal granted (Tenn. Mar. 7, 2005). We disagree, however, with the defendants' contention that the trial court should have applied the mitigating factor that they lacked substantial judgment due to their youth.

Whited's adult criminal history consisted of a misdemeanor conviction for domestic assault, a misdemeanor conviction for contributing to the delinquency of a minor, and a felony conviction for possession of cocaine, while Rutherford's adult criminal history consisted of a misdemeanor conviction for assault. While their record of adult criminal convictions is relatively minimal, it nonetheless qualifies as a history of criminal convictions in addition to those necessary to establish their ranges and is entitled to some weight in our determination of the length of their sentences. Accordingly, we modify Rutherford's sentences to consecutive terms of twenty-one years for the second degree murder conviction and one year and six months for the reckless endangerment conviction, for an effective sentence of twenty-two years and six months in the Department of Correction. We modify Whited's sentences to consecutive terms of twenty-one years for the second degree murder conviction, four years for each of the three aggravated assault convictions, and one year and six months for the reckless endangerment conviction, for an effective term of thirty-four years and six months in the Department of Correction.

## CONCLUSION

Based on our review, we modify the sentencing determinations of the trial court and remand for imposition of modified sentences in accordance with this opinion.


_____
ALAN E. GLENN, JUDGE