# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
May 18, 2011 Session

## STATE OF TENNESSEE v. JAMES EARL GARRETT, JR.

**Appeal from the Circuit Court for Dickson County**
**No. 22CC-2008-CR-171    Larry Wallace, Judge**

---

**No. M2010-01391-CCA-R3-CD - Filed August 23, 2011**

---

The defendant appeals the 20-year effective sentence imposed for his Dickson County Circuit Court convictions of two counts of the facilitation of second degree murder, claiming that the trial court erred by misapplying the enhancement factors and by imposing consecutive terms.  Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

Jerred A. Creasy, Dickson, Tennessee, for the appellant, James Earl Garrett, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindy Paduch Stempel, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Ray Crouch, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Originally charged with two counts of first degree premeditated murder, the defendant was convicted following a bench trial of two counts of facilitation of second degree murder for his role in the death of his foster mother, Mary Clark, and her mother-in-law, Gail Clark, on New Year's Day 2008.[1]

At 4:39 a.m. on January 1, 2008, the 17-year-old defendant and his foster

---

[1]A superseding indictment charging the defendant with second degree murder replaced the original indictment charging first degree premeditated murder.

brother, 15-year-old Jeffrey Johnson, telephoned 9-1-1 and reported that an unidentified individual had broken into the Clark residence in White Bluff, shot Mary and Gail Clark, and left through an open window. The boys claimed that they had run from the home and were hiding in a van in the driveway of the residence. Officers responding to the scene discovered the women's bodies inside the residence, one in the hallway and one in the master bedroom. One of the boys told arriving officers that an unidentified individual exited the home, ran across the road, and fled into a nearby field. The officers handcuffed both the defendant and co-defendant and placed them into separate patrol cars, but the officers told the boys that they were not under arrest and that the confinement was only for their safety.

During an interview conducted at the scene, the defendant said that he and the co-defendant were watching television in the defendant's bedroom when they "heard a bang" followed by "another boom." The defendant said that he told the co-defendant to hide under the bed while he hid in the closet and that while he was hiding in the closet, he "saw a dark figure run past [his] window." The two boys left the room and encountered Gail Clark's body in the hall. They ran outside, and the co-defendant telephoned 9-1-1. The co-defendant also provided a statement at the scene, and his statement confirmed the defendant's version of events.

In later statements, however, the defendant admitted that the co-defendant shot the women and that the two conspired to cover up the crime. Other evidence established that the defendant stole the handgun used in the shootings from a neighbor before Christmas. Autopsies revealed that both women died from a close range gunshot wound to the head and that death was nearly instantaneous in both cases.

The defendant told officers that the co-defendant had been "wishing" Mary Clark dead since the defendant had moved into the residence. After the murders, the defendant and co-defendant took Mary Clark's van to Clarksville, where they visited with friends, got something to eat, obtained money from an ATM, and purchased gas. They then returned to the Clark residence, called 9-1-1, and provided the false police report.

Based upon his procuring the murder weapon and providing the co-defendant with access to the weapon, the trial court convicted the defendant of two counts of facilitation of second degree murder.

At the November 9, 2009 sentencing hearing, Martha Garrett, the defendant's stepmother,[2] explained that the defendant was originally taken into custody as a juvenile

---

[2]Although some portions of the record indicate that Ms. Garrett is the defendant's mother, defense

because he had taken her truck without permission and had left his eight-year-old brother home alone. She said that she and the defendant's father initiated the juvenile proceeding in hopes that "tough love would straighten him out." Ms. Garrett stated that she and her husband, former military service members with a combined 42 years of service, could not get the defendant to follow the rules at home and hoped that a placement in state custody would help. She said that just before the offenses, she and her husband had agreed to reunification with the defendant.

Ms. Garrett testified that if the defendant was given a sentence involving release into the community, she and her husband were willing to allow the defendant to live with them and agreed to take responsibility for him.

At the conclusion of the hearing, the trial court imposed a sentence of 10 years for each conviction, finding enhancement factors (1), that the defendant had a history of criminal convictions or criminal behavior in addition to that necessary to establish the range; (6), that the injuries inflicted upon the victims was particularly great; (9), that the defendant possessed or employed a firearm during the commission of the offense; (10), that the defendant had no hesitation about committing a crime when the risk to human life was high; and (16), that the defendant had a juvenile adjudication for an offense that would have been a felony for an adult, were applicable to the defendant's case and warranted more than the minimum sentence. *See* T.C.A. § 40-35-114 (2006). The court also ordered the 10-year sentences to be served consecutively based upon its finding that the defendant was a dangerous offender. *See id.* § 40-35-115(b)(4).

In this appeal, the defendant challenges the sentence imposed by the trial court, arguing that the trial court imposed the individual terms as well as consecutive sentencing in error. When considering challenges to the length and manner of service of a sentence this court conducts a de novo review with a presumption that the determinations of the trial court are correct. T.C.A. § 40-35-401(d) (2006). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The appealing party, in this case the defendant, bears the burden of establishing impropriety in the sentence. T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see also Ashby*, 823 S.W.2d at 169. If our review of the sentence establishes that the trial court gave "due consideration and proper weight to the factors and principles which are relevant to sentencing under the Act, and that the trial court's findings of fact . . . are

---

[2](...continued)

counsel established her relationship to the defendant via her marriage to the defendant's father. The record is clear, however, that Ms. Garrett had at least served as the defendant's "mother" for his entire life.

adequately supported in the record, then we may not disturb the sentence even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

In making its sentencing decision, the trial court was required to consider:

(1) The evidence, if any, received at the trial and the sentencing hearing;
(2) The presentence report;
(3) The principles of sentencing and arguments as to sentencing alternatives;
(4) The nature and characteristics of the criminal conduct involved;
(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
(6) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b). The trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(5).

The defendant first asserts that the trial court erroneously applied all five enhancement factors. The State concedes that the trial court misapplied four of the five enhancement factors, acknowledging that factors (1), (6), (10), and (16) are inapplicable to the defendant's convictions. Nevertheless, the State argues that the imposition of factor (9), that the defendant possessed or employed a firearm during the commission of the offense, supports the 10-year sentence imposed in each case.

Initially, we agree with the parties that the trial court should not have applied enhancement factor (1) because the defendant had no record of criminal activity as an adult or factor (16) because the record did not conclusively establish that the defendant received a juvenile adjudication for an offense that would have been a felony for an adult. Additionally, the trial court should not have applied enhancement factors (6), that the injuries inflicted upon the victims were particularly great, or (10), that the defendant had no hesitation committing a crime where the risk to human life was high, because those factors are necessarily included within the offense of facilitation of second degree murder. In light of the misapplication of these factors, our review is de novo with no presumption of correctness.

-4-

With regard to factor (9), that the defendant possessed or employed a firearm during the commission of the offense, the defendant asserts that this factor is inapplicable because although there was proof that the defendant possessed the firearm before the commission of the homicides, no proof showed that he possessed it during the homicide offenses. The defendant also argues that because his prior possession of the gun was the sole evidence supporting a finding that he facilitated the victim's murder, use of enhancement factor (9) in his case would run afoul of Code section 40-35-114's prohibition on using as enhancement those factors that are elements of the conviction offense. We disagree.

The proof presented at trial established that the defendant took the handgun used to kill the victims from his neighbor's house and secreted it on his person in the ensuing days. The State also presented ample proof to support the trial court's conclusion that the defendant provided the co-defendant with access to the weapon despite the defendant's knowing that the co-defendant had been "wishing" Mary Clark dead for months. Indeed, the defendant does not contest the fact that the co-defendant obtained the murder weapon from him. The defendant was convicted of facilitation of second degree murder for providing substantial assistance to the co-defendant in the commission of the murders. Clearly, the defendant possessed the gun when he committed the facilitation offense by providing the gun to the co-defendant. Furthermore, neither second degree murder, *see, e.g.*, *State v. Moss*, 13 S.W.3d 374, 388 (Tenn. Crim. App. 1999); *State v. Butler*, 900 S.W.2d 305, 312-13 (Tenn. Crim. App. 1994), nor, by extension, facilitation of second degree murder, *see* T.C.A. § 39-11-403(a), has as an element the possession of a firearm such that its application would be precluded by Code section 40-35-114. Accordingly, the trial court did not err by applying enhancement factor (9) to the defendant's convictions.

Moreover, we agree with the trial court's assessment that this factor is entitled to great weight. The defendant's taking the gun from his neighbor, secreting it in the Clark residence, and providing it to the co-defendant who had already expressed homicidal intentions was integral to the offenses. Under these circumstances, the application of this single enhancement factor is sufficient to warrant an upward adjustment of the individual sentences to the midpoint within the range.

The defendant also challenges the imposition of consecutive sentencing, arguing that the record does not support the trial court's finding that the defendant qualified as a dangerous offender. When a defendant is convicted of multiple crimes, the trial court, in its discretion, may order the sentences to be served consecutively if it finds by a preponderance of the evidence that a defendant falls into one of seven categories listed in Tennessee Code Annotated section 40-35-115. They are:

(1) The defendant is a professional criminal who has knowingly

devoted such defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences:

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b). The existence of a single category is sufficient to warrant the imposition of consecutive sentences. *See State v. Adams*, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997). Here, the trial court concluded that the defendant fit into the fourth category, that the defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. In *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995), the supreme court imposed two additional requirements for consecutive sentencing when the "dangerous offender" category is used: (1) the court must find consecutive sentences are reasonably related to the severity of the offenses committed and (2) that consecutive sentences are necessary to protect the

public from further criminal conduct. *State v. Wilkerson*, 905 S.W.2d 933, 937-39 (Tenn. 1995); *see also State v. Imfeld*, 70 S.W.3d 698, 707-08 (Tenn. 2002).

Here, the trial court specifically addressed each of the *Wilkerson* factors, finding that the defendant's history of failure to follow the rules and requirements of his juvenile court adjudications and adjustments along with his behavior following the murders satisfied the two *Wilkerson* requirements. Upon our de novo review, we conclude that the record supports the findings of the trial court.

The record established that the defendant was originally placed in state custody following charges from his parents that he had taken Ms. Garrett's vehicle without permission and left his 8-year-old brother home alone. The record establishes that the defendant failed to comply with the terms of the original informal adjustment or the terms of the subsequent juvenile adjudication. The defendant stole a handgun from the home of a neighbor while serving a term of probation imposed by the juvenile court and later provided that weapon to the co-defendant despite the co-defendant's telling the defendant that he wished to kill Mary Clark. After the murders, instead of telephoning emergency personnel, the defendant drove the co-defendant in Mary Clark's van to Clarksville, where he visited with friends as though two women did not lay dead inside the Clark residence. Upon his return to White Bluff, the defendant helped the co-defendant orchestrate a cover-up of the offenses. The defendant's history of rule-breaking combined with his astonishingly cavalier attitude about the victims' deaths supports a finding that the defendant is a dangerous offender and the imposition of consecutive sentencing in this case.

Accordingly, the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE