IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 25, 2012

## STATE OF TENNESSEE v. MEL LINDSAY ATWELL

**Direct Appeal from the Circuit Court for Grundy County**
No. 4637    Thomas W. Graham, Judge

**No. M2011-01327-CCA-R3-CD - Filed August 17, 2012**

The Defendant, Mel Lindsay Atwell, pled guilty to driving under the influence fourth offense, a Class E felony, and aggravated assault, a Class C felony. The trial court sentenced the Defendant to five years for the aggravated assault conviction and two years for the felony driving under the influence conviction and ordered that the sentences run consecutively, for an effective sentence of seven years. On appeal, the Defendant argues that the trial court erred when it imposed consecutive sentences because the State had not met its burden of proof to support that decision. After a thorough review of the record and the applicable law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROGER A. PAGE, JJ., joined.

Philip L. Duval, Chattanooga, Tennessee, for the appellant, Mel Lindsay Atwell.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; J. Michael Taylor, District Attorney General; and David L. Shinn, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

This case arises from the Defendant's driving while under the influence of an

1

intoxicant, which resulted in the a high speed chase. As a result of his actions, a Grundy County grand jury returned a fourteen-count indictment against the Defendant. The Defendant pled guilty as a Range I Standard Offender to two of those counts, driving under the influence ("DUI") fourth offense and aggravated assault. The transcript of the guilty plea hearing was not made a part of the appellate record.

At the sentencing hearing, Sergeant Larry Fraley, with the Tennessee Highway Patrol, testified that on February 4, 2010, at approximately 7:30 a.m., he was on patrol near Monteagle Mountain when the Defendant drove past him in a gold Lexus. The sergeant's radar indicated that the Defendant was traveling 80 miles per hour in a 55-mile per hour zone. The sergeant activated his blue lights and attempted a traffic stop, but the Defendant "still proceeded at a high rate of speed." After some period of time, the Defendant pulled over near the foot of Monteagle Mountain, but, as soon as Sergeant Fraley approached the Defendant's vehicle, the Defendant put his car in reverse, turned around, and "took off." The Defendant fled on the right shoulder of the road, driving approximately 90 miles per hour. The sergeant said that the Defendant then sped through an active school zone of fifteen miles per hour, as well as through an intersection. Sergeant Fraley testified that, because he drove an "SUV" police vehicle and could not pursue a speeding car for a great distance, he discontinued his participation in the pursuit. Sergeant Fraley confirmed that the video camera in his patrol car captured the pursuit, which the State played for the jury.

Deputy Heath Gunter, with the Grundy County Sheriff's Department, testified that on the morning in question, he was assigned as a student resource officer at a high school, and because it was the beginning of the school day, several students were coming into and out of the school. The deputy said he received notice that the Defendant was driving a gold Lexus toward the school zone. He stated that he was dispatched to participate in the pursuit of the Defendant. He drove toward the pursuit, and, along with two other officers, he created a road block before the active school zone in an effort to stop the Defendant. The deputy testified that the Defendant stopped when he reached the road block and appeared as though he was going to exit the vehicle. The Defendant, however, quickly closed his vehicle door, drove over a corner of the grass, and headed straight toward Deputy Gunter. The deputy testified that, because it was apparent the Defendant was not going to stop, he jumped out of the way. He felt the Defendant's vehicle barely swipe the side of his leg. Deputy Gunter then, in an effort to disable the Defendant's vehicle, "fired one round at the right rear side of his car."

At that point, the Defendant drove in the direction of the high school, and Deputy Gunter pursued in his patrol car. He testified that he notified the high school administration about the pursuit and requested that they clear the school zone. The deputy stated that, although he was traveling in excess of 100 miles per hour, the Defendant pulled away from

him. Deputy Gunter testified that Trooper Stephens then passed the Defendant in the pursuit and pulled his patrol car in front of the Defendant to stop him. The deputy stated that the Defendant stopped, so he pulled his patrol car behind the Defendant's vehicle and attempted to step out of the patrol car. Deputy Gunter testified that the Defendant put his car in reverse and hit the front of the deputy's patrol car, making a "big enough gap" between the two cars for the Defendant to drive away.

Trooper Junior Stephens, with the Tennessee Highway Patrol, testified that he received a dispatch regarding a pursuit that was headed in the direction of his patrol area. Trooper Stephens stated that he saw the Defendant drive through an intersection at a high rate of speed, and the trooper immediately assisted in pursuing the Defendant. Trooper Stephens testified that he pulled in front of the Defendant to slow him down and to give other officers the opportunity to create a rolling roadblock to stop the Defendant. Trooper Stephens stated that his actions were effective in slowing the Defendant down and forcing him to stop. Once the trooper exited his vehicle, however, the Defendant pulled away and fled. Trooper Stephens stated that the video camera in his patrol car captured the events of the pursuit, and the State played the video for the jury. As the video played, Trooper Stephens described the pursuit. He stated that the Defendant was traveling at a speed of approximately 75 miles per hour in a 45-mile per hour zone. Trooper Stephens testified that the Defendant reached speeds over 100 miles per hour. The trooper stated that he slowed from the pursuit when he reached a construction zone because he did not want to further endanger the construction workers. Trooper Stephens testified that the Defendant came to a final stop when the Defendant crashed his vehicle in a ditch, and the vehicle rolled over.

The State also offered evidence of a previous DUI arrest, which included the testimony of Sergeant James VanDyke, a Tennessee Highway Patrol officer. Sergeant VanDyke testified that on May 8, 2009, at approximately 1:15 a.m., the Defendant, who drove a gold Lexus, turned out of a gas station parking lot right in front of him. To avoid a collision, the sergeant was forced to "slam" on his brakes. Sergeant VanDyke activated his blue lights, and he initially thought the Defendant was going to stop because it appeared that he put his vehicle in reverse in order to return to the gas station parking lot. Sergeant VanDyke testified that the Defendant, however, continued to back up and then began to drive forward at a rapid rate of speed towards the interstate. The sergeant stated that, once the Defendant entered the interstate, he notified dispatch of the pursuit of the Defendant.

Sergeant VanDyke testified that, on the interstate, the Defendant reached speeds over 100 miles per hour. The sergeant stated that there was other traffic on the interstate, and the Defendant almost collided with a tractor trailer. The Defendant exited the interstate and missed hitting another car by what the sergeant estimated to be "inches." At that point, Sergeant VanDyke noticed oil and smoke coming from the Defendant's vehicle. The

3

Defendant pulled his vehicle into a yard, exited the vehicle, and fled on foot. Sergeant VanDyke stated that he apprehended the Defendant when the Defendant was unable to scale a fence. At that point, the sergeant noticed that the Defendant appeared extremely intoxicated, his speech was slurred, and he emitted a strong odor of alcohol from his person. The Defendant, however, refused to submit to a breath or blood test. Sergeant VanDyke stated that, after he placed the Defendant in the patrol car, the Defendant passed out. Sergeant VanDyke testified that the series of charges associated with that stop were still pending in Hamilton County.

The Defendant testified that he had been drinking the night before and fled from officers on February 4, 2010. He, however, denied trying to harm any person or any property. He stated that he fled from officers because he, at the time, was released on a $46,000 bond in Chattanooga and was concerned that he would lose that bond. The Defendant explained that the previous incident with Sergeant VanDyke, which caused him to be on bond, stemmed from side effects of the "heavy medication" prescribed to him after a recent surgery. He acknowledged that he knew a shot had been fired and struck his car. He admitted that, over the years, he had received "several" DUI convictions. The Defendant also admitted that he had a "long" criminal history, which included prior convictions for evading arrest and resisting arrest. The Defendant acknowledged that all of the events in the present case happened while he was serving a five-year probationary sentence for offenses that occurred in Georgia.

On cross-examination, the Defendant admitted that he had spent time in the Mississippi state penitentiary for a first offense DUI. Regarding some of his other prior offenses, the Defendant stated that he served sentences of probation.

Wayne Hammond, a minister, testified that he holds Bible studies at the local jail. He stated that he met the Defendant shortly after he was taken into custody. He testified that, "if the Judge will be lenient towards [the Defendant], . . . I do not believe that [the Defendant] will ever be in any more trouble."

In lieu of calling employees of the Grundy County jail to testify as witnesses on the Defendant's behalf, the State stipulated that the Defendant had been a "model prisoner."

At the conclusion of the hearing, the trial court, after considering applicable enhancement and mitigating factors, sentenced the Defendant to five years for the aggravated assault conviction and two years for the DUI conviction. The trial court ordered that the sentences run consecutively for an effective sentence of seven years. It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant argues that the trial court "failed to cure the record or clarify that the State had met its burden by preponderance of the evidence that any factors in [Tennessee Code Annotated section] 40-35-115 qualified for the [trial court's] imposition of consecutive sentences." The State responds that the record reveals that the Defendant "had an extensive criminal history and was on probation in Georgia when he committed these offenses." The State submits that either factor alone supports the imposition of consecutive sentences. We agree with the State.

As an initial matter, we address the fact that the Defendant failed to include in the record on appeal the guilty plea submission hearing transcript. It is the defendant's duty to compile a complete record for appeal. Tenn. R. App. P. 24(b). A panel of this Court recently held that the guilty plea hearing transcript is vital to a *de novo* review of sentencing and in the absence of an adequate record, we will presume the trial court's rulings were supported by sufficient evidence. *See State v. Christine Caudle*, No. M2010-01172-CCA-R3-CD, 2011 WL 6152286, at *4 (Tenn. Crim. App., at Nashville, Dec. 8, 2011), *perm. app. granted* (Tenn. April 12, 2012). Another panel of this Court, however, concluded that, despite the absence of the guilty plea submission hearing transcript, the record was adequate to afford appellate review. *State v. Anna M. Steward*, No. E2010-01918-CCA-R3-CD, 2011 WL 4346659, at *5 (Tenn. Crim. App., at Knoxville, Sept. 19, 2011), *no Tenn. R. App. P. 11 application filed*. Based upon the specific facts of this case, we conclude that sufficient testimony regarding the nature of the Defendant's offenses was adduced at the sentencing hearing to allow this Court to evaluate the propriety of his sentences.

When a defendant challenges the length, range, or manner of service of a sentence, this Court must conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2010). As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts (2010). This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration to the factors and principles relevant to sentencing under the Sentencing Act, the appellate court may not disturb the sentence even if a different result was preferred. T.C.A. § 40-35-103 (2010); *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994).

Further, consecutive sentencing is a matter addressed to the sound discretion of the trial court. *State v. James*, 688 S.W.2d 463, 465 (Tenn. Crim. App. 1984). A trial court may order multiple sentences to run consecutively if it finds, by a preponderance of the evidence, that at least one of the seven statutory factors exists. T.C.A. § 40-35-115(b)(1) - (7) (2010). In addition to these criteria, consecutive sentencing is subject to the general sentencing principle that the length of a sentence should be "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved for the offense committed." T.C.A. § 40-35-102(1), -103(2) (2010); *see also State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002).

In this case, the trial court found the following factors applicable:

(1)     The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood; [and]

. . . .

(6)     The defendant is sentenced for an offense committed while on probation[.]

T.C.A. § 40-35-115(b)(1), (6) (2010). These criteria are stated in the alternative; therefore, only one need exist in order to impose consecutive sentencing.

Here, the trial court made a finding that the State had produced sufficient evidence that statutory factors (1) and (6) apply:

. . . There are many, many convictions in this man's file. It's hard to get just an exact figure, but there are at least seven felony convictions, if you include the two involved today, on his record. There are at least 14, 15 misdemeanor violations, but there are really many more misdemeanor violations than that on his record. Do this is a significant factor of enhancement.

Further, this particular crime was committed while the [D]efendant was [on] probation, released on probation from Georgia . . . . Those are two very clear enhancing factors that apply in this case.

*See id.*

Our review of the record reveals that the Defendant has an extensive criminal history that began in 1984 and included the following offenses: grand larceny, reckless driving,

6

driving under the influence, driving with a revoked license, resisting arrest, assault, evading arrest, criminal trespass, and passing worthless checks.  Further, in 2008, the Defendant was sentenced to five years of probation in Georgia for making terroristic threats.  Therefore, the Defendant committed the offenses at issue in this case, aggravated assault and DUI, while serving that five-year probationary sentence.  Based upon this evidence, the trial court did not err in ordering consecutive sentences.  Ample evidence in the record supports the factors relied upon by the trial court to order consecutive sentencing in this case.  Thus, the Defendant is not entitled to relief.

### III. Conclusion

Based on the foregoing reasoning and authorities, we affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE